IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,

CENTRAL DIVISION

| | |
|---|---|
| GEOFFREY STEPHEN ARMSTRONG,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:12-cv-00350-EJF<br><br>Magistrate Judge Evelyn J. Furse |

Plaintiff Geoffrey Stephen Armstrong asks the Court[1] to remand the Social Security Administration's final agency decision denying him Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act. The Administrative Law Judge ("ALJ") determined that Mr. Armstrong did not meet the eligibility standards for benefits because he did not qualify as having "a disability, as defined in the Social Security Act from June 15, 2009 through the date of [the ALJ's] decision." (The certified copy of the transcript of the entire record of the administrative proceedings relating to Mr. Armstrong (hereafter "Tr. __") 49, ECF No. 9.) Having carefully considered the parties' memoranda and the complete record in this matter, the Court REMANDS the Commissioner's decision for the following reasons.[2]

---

[1] In accordance with 28 U.S.C. sections 636(c)(1) and (3) and Federal Rule of Civil Procedure 73, the parties have consented to proceed before the undersigned United States Magistrate Judge. (ECF No. 9 .)

[2] Pursuant to Civil Rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the Court elects to determine the motion on the basis of written memoranda and finds oral argument unnecessary.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Armstrong was born on June 1, 1965. (Tr. 77.) He alleges onset of his disability beginning June 15, 2009 and his date last insured as December 31, 2013. (Tr. 79.) In July 2009, Mr. Armstrong protectively filed applications for DIB and SSI, which the Commission denied initially on October 28, 2009 and again upon reconsideration, October 12, 2010. (Tr. 41.) Mr. Armstrong then filed a written request for hearing before an ALJ on October 18, 2010, which the Commission granted. (*Id.*) The hearing took place on August 17, 2011, in Salt Lake City, Utah. (*Id.*) Following an unfavorable decision issued by the ALJ (Tr. 49), Mr. Armstrong filed a request for a review by the Appeals Council on September 28, 2011. (*See* Tr. 36.)

Mr. Armstrong presented evidence to demonstrate that he had suffered from Type II diabetes mellitus, cervicalgia with neuropathy, hypertension, foot pain, and neck pain. (Tr. 43, 46–48.) Mr. Armstrong also introduced evidence that he had depression, bipolar disorder, and short-term memory loss. (Tr. 44.) Mr. Armstrong contends he could not perform any work in the national economy because of these conditions. (*See* Tr. 88.) Mr. Armstrong testified he has consistent pain in his neck and back, nerve pain and numbness in his left arm, pressure on his ankles, and numbness in his feet. (Tr. 60–64.) As a result, he testified he can only sit between 5-10 minutes at a time before needing a break. (Tr. 61.) He can stand with the use of a cane for 15 minutes to a half an hour at a time and needs to lay down to rest three hours per day. (Tr. 61, 63.) Moreover, Mr. Armstrong testified that because of his depression he feels antisocial and rarely leaves his home to socialize. (Tr. 67.)

The ALJ concluded Mr. Armstrong did not have a disability as defined by the Social Security Act because as a "younger individual age 18-49," he had a residual functional capacity

("RFC") sufficient to perform "the full range of light work," and a significant number of jobs in the national economy exist that Mr. Armstrong could perform. (Tr. 48-49.)

## STANDARD OF REVIEW

42 U.S.C. section 405(g) provides for judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA"). The court reviews the Commissioner's decision to determine whether the record as a whole contains substantial evidence in the support of the Commissioner's factual findings and whether the SSA applied the correct legal standards. 42 U.S.C. §405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The Commissioner's findings shall stand if supported by substantial evidence. 42 U.S.C. §405(g).

Adequate, relevant evidence that a reasonable mind might accept to support a conclusion constitutes substantial evidence, and "[e]vidence is insubstantial if it is overwhelmingly contradicted by other evidence." *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The standard "requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. "Evidence is not substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1992) (internal quotation marks and citations omitted).

Although the reviewing court considers "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases," the court "will not reweigh the evidence or substitute [its] judgment for the Commissioner's," *Lax*, 489 F.3d at 1084 (internal quotation marks and citations omitted), but "review only the *sufficiency* of the evidence," *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).

The court does not have to accept the Commissioner's findings mechanically, but "examine the record as a whole, including whatever in the record fairly detracts from the weight of the [Commissioner's] decision and, on that basis, determine if the substantiality of the evidence test has been met." *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994) (internal quotation marks and citation omitted). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence,'" and the court may not "'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. FAA*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In addition to a lack of substantial evidence, the court may reverse where the Commission uses the wrong legal standards or the Commissioner fails to demonstrate reliance on the correct legal standards. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994); *Thomson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1047 (10th Cir. 1993).

## **LEGAL STANDARDS**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Further, the Act considers an individual disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

4

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* at § 423(d)(2)(A).

The Commissioner employs a five-step sequential evaluation process for determining whether a person qualifies as disabled within the meaning of the Act. The analysis evaluates whether:

> (1) the claimant presently engages in substantial gainful activity;
> (2) the claimant has a medically severe physical or mental impairment or impairments;
> (3) the impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;
> (4) the impairment prevents the claimant from performing his or her past work; and
> (5) the claimant possesses a residual functional capacity to perform other work in the national economy considering his or her age, education, and work experience.

*See* 20 C.F.R. § 404.1520 (2012).

In sum, if the claimant does not engage in substantial gainful activity, then the decision maker must proceed to step two of the evaluation process to determine whether the claimant has an impairment or combination of impairments severe enough to limit his ability to perform basic work activities. *See id.* at § 404.1520(c). The decision maker makes the determination of this issue based on medical factors alone. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

A finding of any severe impairment leads the decision maker to step three to determine whether the claimant's impairment meets the durational requirement and appears in Appendix 1 of Subpart P, 20 C.F.R. § 404, or equals a listed impairment. *See* 20 C.F.R. § 404.1520(d). If the claimant's impairment, or the equivalent thereof, does not appear, the decision maker presumes the claimant qualifies as disabled. *See id.* § 404.1520(d). If the impairment does not appear, the decision maker proceeds to step four.

Before considering step four, the decision maker must first determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is the ability to do physical and mental work activities on a sustained and regular basis despite limitations from his impairments. *See* 20 C.F.R. § 404.1545(a). In making this finding, the decision maker considers all of the claimant's medically determinable impairments, including those not considered "severe." *See* 20 C.F.R. § 404.1545(b).

At step four, the decision maker uses the RFC to determine if the claimant has the ability to perform his or her past relevant work. *See id.* at § 404.1520(e)-(f). If the claimant is able to perform work he or she has done in the past, he or she is not disabled. *Id*. Finally, if the claimant is not able to perform past relevant work, the fifth step is to use the RFC to determine if the claimant has the ability to perform any alternative work available in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g). In the first four steps, the claimant has the burden to establish disability. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). At this step, however, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy. *Id.* "Where the claimant's impairment is so severe that it precludes him or her from performing work s/he has done in the past, s/he is deemed disabled unless the Commissioner can establish that "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Williams*, 844 F.2d at 751 (internal quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1520(g).

## **ANALYSIS**

In this case, the ALJ applied the five-step sequential disability evaluation, and made the following findings of fact and conclusions of law with respect to Mr. Armstrong:

1. "[Mr. Armstrong] has not engaged in substantial gainful activity since June 15, 2009, the alleged onset date." (Tr. 43.)
2. "[Mr. Armstrong] has the following severe impairments: (1) Type II diabetes mellitius and (2) Cervicalgia with neuropathy." (Tr. 43.)
3. "[Mr. Armstrong] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 46.)
4. Further, "[Mr. Armstrong] has the residual functional capacity to perform the full range of light work". (Tr. 46.)
5. "[Mr. Armstrong] is unable to perform any past relevant work." (Tr. 48.)
6. "Considering [Mr. Armstrong]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Mr. Armstrong] can perform." (Tr. 49.)

In summary, the ALJ found Mr. Armstrong's severe impairments limited his ability to perform substantial gainful activity since his alleged onset date. (Tr. 43–49.) However, despite those impairments, the ALJ found Mr. Armstrong could still perform the full range of light work and therefore did not qualify for DIB. (Tr. 49.) Mr. Armstrong challenges the ALJ's determination on three grounds: (1) the ALJ erred by rejecting his mental impairments at step two of the sequential evaluation process; (2) the ALJ erred in rejecting the claimant's own subjective complaints and lay witness testimony; and (3) the ALJ erred by failing to meet his burden in the fifth step by identifying available jobs in the national economy that Mr. Armstrong could perform with his specific functional limitations. (Plaintiff's Opening Brief 11, ECF No. 12.)

## DISCUSSION

**I.  The ALJ's Failure to Recognize Mr. Armstrong's Mental Impairments as "Severe" in Step Two Constitutes a Harmless Error Because the ALJ Found Other Severe Impairments and Moved to Step Three in the Sequential Evaluation Process.**

Mr. Armstrong argues that the ALJ erred in step two in the evaluation process by "rejecting" Mr. Armstrong's mental impairments for not rising to the level of severe. (Plaintiff's Opening Brief 13–14, ECF No. 12.) More specifically, Mr. Armstrong argues the record

demonstrates that his mental impairments had a much more serious impact than the ALJ recognized, such as his depression causing his inability to move out of a homeless shelter. (*Id.* at 14.) At step two, the claimant must show that he suffers from an *impairment* or combination of impairments that rise to the level of severe. "Severe" means an impairment significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c). The Tenth Circuit has determined that this step requires only a "de minimis" showing of impairment. *See Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997).

> [A]n impairment can be considered as not severe only if it is a slight abnormality [having] such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

*Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).

Then, the ALJ must determine whether the claimant has an impairment or combination of impairments so slight that one would not expect the impairment to limit the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c). If the claimant does not have any severe impairments, the claimant does not qualify as disabled. However, if the ALJ finds the claimant has *any* severe impairment, the disability analysis proceeds to the next step. Additionally, failing to enumerate a particular severe impairment constitutes "harmless error" if the ALJ finds another, separate severe impairment. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that [the claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). While Mr. Armstrong's mental impairments may qualify as severe enough to meet the "de minimis" standard, any error at step two remains harmless because the ALJ found other severe impairments and continued the analysis. (*See* Tr. 43–46.)

## II. Substantial Evidence Supports the ALJ's Finding that Mr. Armstrong's Subjective Testimony Regarding his Symptoms Lacked Credibility.

Mr. Armstrong argues the ALJ improperly rejected the claimant's subjective testimony regarding the intensity, persistence, and limiting effects of his impairments. (Plaintiff's Opening Brief 17–18, ECF No. 12.) When evaluating credibility, the ALJ must follow the prescribed two-step process: (1) evaluate whether the claimant has an underlying medically determinable impairment that one could reasonably expect to produce the claimant's pain or other symptoms; and (2) evaluate the intensity, persistence, limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. *See Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (discussing factors to evaluate credibility). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). The ALJ must cite specific evidence used in evaluating a claimant's subjective complaints, and if he finds those complaints incredible, he must explain why. *See id.* However, this analysis "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000). "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, [the credibility determination requisites] are satisfied." *Id.*

The ALJ completed the first step of the credibility process by evaluating whether Mr. Armstrong had a medically determinable impairment that one could reasonably expect to produce pain or other symptoms. (*See* Tr. 47–48.) The ALJ acknowledged Mr. Armstrong suffered from mild degenerative disc disease with minimal foraminal narrowing at C3-4 and mild to moderate disc bulges of C5-6 and C6-7. (Tr. 47.) The ALJ noted that Mr. Armstrong's

9

blood sugar levels generally fall above normal levels, and his diabetes was poorly controlled. *Id.* Moreover, the ALJ noted that recent exams demonstrated "some tenderness" in Mr. Armstrong's "feet and ankles, mildly flattened arches . . . , abnormal gait, and decreased sensation in the feet." *Id.* Consequently, the ALJ recognized that the "mild to moderate abnormalities of [Mr. Armstrong's] cervical spine . . . would reasonably cause some pain and limitation in the ability to lift." *Id.* Also, the ALJ noted that the recent exams "are consistent with some difficulties with walking and standing." *Id.*

In the second step, in evaluating the intensity, persistence, and limiting effects of Mr. Armstrong's symptoms, the ALJ found Mr. Armstrong's testimony noncredible "to the extent [it is] inconsistent with the above residual functional capacity assessment." (Tr. 47.) The ALJ found that exam findings for most of the period did not support Mr. Armstrong's allegations regarding numbness in his left arm and limitations in the ability to walk, stand, lift, or perform activities of daily living. *Id.* Specifically, the ALJ found an absence of "evidence of significant canal stenosis or nerve root impingement that would account for the radicular symptoms alleged by the claimant." *Id.* The ALJ found that because Mr. Armstrong did not seek prescribed pain medication and more aggressive treatment for his neck pain, the record undermined his allegations regarding the severity of his neck pain. (Tr. 48.) He also noted that Mr. Armstrong's latest A1C reading fell only marginally above the normal range of A1C, indicating no significant progression of his diabetes. (Tr. 47.) Finally, the ALJ found Mr. Armstrong's report to his primary physicians that he walked three miles a day belied his claims of foot pain. (Tr. 48.) For these reasons, the ALJ found Mr. Armstrong's testimony regarding his pain and limitation not credible because "the evidence does not support his allegations." (Tr. 47–48.)

In the first step, the ALJ properly evaluated Mr. Armstrong's underlying medical evidence in the credibility findings. Then, in the evaluation of intensity and limiting effects of Mr. Armstrong's impairments, the ALJ properly explained why he found the medical evidence inconsistent with Mr. Armstrong's testimony and set forth the specific evidence he relied on in evaluating the claimant's credibility. Therefore, the ALJ did not err in his credibility findings because substantial evidence supported the finding.

### III. The ALJ did not Err in Step Five by Relying Conclusively on Medical Vocational Rule 202.21 to find Mr. Armstrong "Not Disabled" and by not Considering the Vocational Expert's Testimony.

Mr. Armstrong argues the ALJ failed to meet his burden in step five by improperly relying conclusively on medical vocational rule 202.21 and by disregarding the vocational expert's testimony when listing jobs in the national economy that Mr. Armstrong could perform. (Plaintiff's Opening Brief 21, ECF. No. 12.) Once the claimant demonstrates that his impairments prevent him from engaging in past relevant work, the burden shifts at step five to the Commissioner to demonstrate "that the claimant retains the . . . (RFC) to do other work that exists in the national economy." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). To meet this burden, the ALJ must prove, with substantial evidence, that the claimant can work at a level lower than his past relevant work on a daily basis. *Id.* at 1491. The ALJ may not rely on the absence of evidence as substantial evidence as it "effectively shifts the burden back to the claimant." *Id.* at 1491.

The ALJ found that Mr. Armstrong could not return to his past work but retained the ability to perform the full range of light work. (Tr. 46–48.) Specifically, the ALJ concluded that, based on the RFC assessment, that Medical-Vocational Rule 202.21 supports "a finding of 'not disabled'." (Tr. 49.) In the RFC assessment, the ALJ recognized that the "mild to moderate

abnormalities of [Mr. Armstrong's] cervical spine. . . would reasonably cause some pain and limitation in the ability to lift." (Tr. 47.) The ALJ found that the evidence supported "some moderate limitations in the ability to lift heavy objects." (Tr. 47.) Light work and sedentary work have such limitations. Also, the ALJ noted that the recent exams "are consistent with some difficulties with walking and standing." (Tr. 47.) However, the ALJ found that Mr. Armstrong's testimony and reports to doctors of "walking significant distances every day" demonstrates that his pain was insignificant with respect to performing the walking and standing necessary to perform light work. (Tr. 48.)

Based on physical impairments, the ALJ must first determine the type of work the claimant has the RFC to perform taking into consideration his age, education, and work experience. *William v. Bowen,* 844 F.2d 748, 751–52 (10th Cir. 1988). The Regulations define the types of work as sedentary, light, medium, heavy, or very heavy. 20 C.F.R. § 404.1567d; *see also William*, 844 F.2d at 752. The ALJ often bases his conclusion on the Medical Vocational Guidelines or "grids". 20 C.F.R. § 404, Subpt. P, App. 2; *see Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987).

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b), 416.967(b) (2012). "To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." *Id* Furthermore, where nonexertional impairments such as pain and mental illness exist, "an ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level

on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level."
*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Accordingly, drawing a distinction between nonexertional and exertional is important. Exertion is measured, in the regulatory framework, "in terms of the strength requirements for such physical activities as walking, standing, lifting, carrying, pushing, pulling, reaching, and handling." *Huston v. Bowen*, 838 F.2d 1125, 1131 (10th Cir. 1988); *cf.* 20 C.F.R. § 404.1545(b) (2012). Whereas, nonexertional can be characterized as an impairment "that is present whether or not a claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges" such as relaxing or lying down. *Id.*

Neither the ALJ's findings nor Mr. Armstrong's testimony makes clerk whether nonexertional pain presented a problem or factored in to the determination. Furthermore, the ALJ's findings regarding pain make his use of the grids acceptable. However, the ALJ failed to consider any of Mr. Armstrong's mental impairments in the RFC assessment. At step two, the ALJ considered the four functional areas set out in the disability regulations for evaluating adult mental disorders "in section 12.00C of the Listing of Impairments." (Tr. 45.) However, the ALJ explicitly stated "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 45.) The ALJ never discusses Mr. Armstrong's mental impairments again. (*See* Tr. 46–49.) Therefore, without linking Mr. Armstrong's mental impairments to the RFC assessment, whether the ALJ properly considered the effect these impairments have on Mr. Armstrong's ability to perform the full range of light work on a sustained basis remains unclear.

Finally, the ALJ did not present the vocational expert with any difficulties manifested by Mr. Armstrong's nonexertional limitations related to his depression. (Tr. 71–75.) "'[T]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [ALJ's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990)). Absent an analysis of the mental impairments and any findings regarding the impact of such a nonexertional impairment on the existence of jobs in the economy, substantial evidence does not support the ALJ's findings.

## **CONCLUSION**

For the foregoing reasons, the Court REMANDS the decision of the Commissioner for further findings.

DATED this 28th day of September, 2013.

BY THE COURT:

_____
Evelyn J. Furse
United States Magistrate Judge